BOGUE *et al.* v. NEWCOMB *et al.*, appellants.

*Evidence — refreshing memory — items of account. Acceptance of goods without examination by vendee.*

In an action upon an account for lumber, etc., at the trial a witness for plaintiffs was shown a bill of particulars. He testified that he was unable from recollection to state the items of plaintiffs' account, but upon reading the bill he said, "We delivered these articles to the express in C. The prices I have read were the prices agreed upon." Upon cross-examination he said he was not sure he shipped every item and did not measure all the lumber. He also testified that he sent bills of plaintiffs' account to defendants; that defendants had, in his presence, looked over a copy of plaintiffs' bill and made no objection to the correctness of the items, and that he had no doubt, though he would not swear positively, that the bill looked over by defendants was the identical bill before him. Another witness swore he was present when the account was looked over, and that the bill of particulars in question was the identical one looked over or a *fac simile.* The testimony of these witnesses was not disputed.

*Held*, that it was not error to permit the first witness to read the bill of particulars to refresh his memory and that the evidence was sufficient to sustain a finding in favor of the correctness of the items.

A portion of the timber delivered was smaller than the agreed size. The difference could be told only by measurement. *Held*, that defendants could not, after having received the same and sawed it up without measuring, avoid payment on the ground that such timber was not in accordance with the contract.

APPEAL from a judgment in favor of the plaintiff entered on the report of a referee. The opinion states the case.

*I. Lawson*, for appellants.

*S. Hand*, for respondents.

PARKER, J. This action is brought to recover a balance claimed by the plaintiffs to be due them from defendants, for material for the manufacture of checkers and dominoes, sold and delivered by plaintiffs to defendants, and for work, labor and services done and performed by plaintiffs for defendants.

The defendants answered, denying the allegations of the complaint as to amount of materials furnished, and setting up a special contract by which defendants were to pay for such portion of the lumber furnished, only, as, in the manufacturing, turned out to be suitable, and that large portions of that furnished and charged in plaintiffs' bill, was not suitable for the purposes for which it was ordered.

The issues were referred to a referee to hear and determine. The referee found for the plaintiffs the sum of $349.10, for which, besides costs, judgment was entered. The defendants appeal from the judgment to the general term.

The complaint sets forth the items of the materials and labor claimed for, by reference to a bill of particulars annexed thereto, amounting, in the aggregate, to $1,711.41, and admitted payments thereon to the amount of $1,373.50, and claimed the balance of $337.91 with interest.

To prove the demand, Asa Clark, one of the plaintiffs, was called as a witness, and testified that plaintiffs were partners, and that during the period of time in question, they prepared and furnished materials for defendants. On being shown the bill of particulars

(marked A), and asked whether it contained a correct list of the items of account between plaintiffs and defendants, he answered, "I cannot state from recollection the items of account between the parties; I attended to the shipping of every thing for plaintiff; I knew of the delivery of articles by plaintiffs to defendants." Schedule A, aforesaid, was then placed in his hands, and he was asked to state therefrom the materials furnished, and work done and items of plaintiffs' account. This was objected to for various reasons assigned, but the objection was overruled and defendants excepted. The witness then read all the items from the schedule, and said, "we delivered these articles to the express, in Cohoes; by arrangement with defendants, we were to deliver to the wagon express. These prices that I have read, were the prices agreed upon between us and the defendants; I think the labor was agreed on," and he stated that the services mentioned were worth the amounts charged. Upon his cross-examination, he said he was not sure that he shipped every item, and that he did not personally measure all the lumber sent to defendants.

Other testimony was taken from this witness under defendants' objections, in regard to his having given the items to plaintiffs' book-keeper, who entered them upon the book kept by him, and after he had stated that the book-keeper had, about two years before, disappeared, and had not been heard of since, he was asked to read the items from the book left by the book-keeper, to which defendants objected; but the objection was overruled and defendants excepted. The witness then read the first two items — the bill containing fifty items — and desisted. He also stated that he sent bills of plaintiffs' account to defendants, and that he and his partner, Bogue, had a talk with defendants about the account, in defendant Newcomb's store; that he then had a copy of plaintiffs' bill of items with him, which was looked over by defendants, and that no objection was made to the correctness of the items — the objection, as afterward appears, being to the quality and fitness of the timber — and that he had no doubt, though as appears by his cross-examination he could not swear positively, that bill A, attached to the original complaint, is the identical bill he had in Newcomb's store.

Plaintiff Bogue also testified to being present in Newcomb's store at the time spoken of by the other witness, and says, "Had bill of items of our account with me; both defendants looked it over and compared it with bills they had had from time to time. They did

not object to the bill at all, not as to the items of charges," and, on the bill marked A, being handed to him, he said, "If the bill in my hands is not the identical bill, it is a *fac simile*." He said on his cross-examination, "I judge from the general appearance that this is the identical bill; no other means of identifying it.   *   *   * Mr. Hyatt claimed that *we should allow him for pieces that had been cut out* as unfit for their use."

The defendants' counsel insists that the referee erred in admitting the evidence objected to, and that a new trial should, consequently, be granted.

This evidence was directed to the proof of plaintiffs' bill of items. I have no doubt that the objection to the reading of schedule A, by the witness Clark, was properly overruled. The schedule itself was not thereby admitted in evidence, but the witness was permitted to refresh his recollection by reading the items, and then speak of them from his recollection thus refreshed. This was what he did. In regard to the allowance of the book-keeper's book in evidence, if that ruling was wrong, still, inasmuch as after reading the first two items, the further reading was abandoned, no harm was done by the ruling. Besides, the testimony of both Clark and Bogue as to having the bill of items at Newcomb's store, which defendants then looked over, not disputing the items, but claiming a deduction for defective timber, is evidence of the same fact, sought to be proved by the other evidence. The testimony of Clark and Bogue, so far from being disputed, is corroborated by the testimony of defendant Hyatt, who says, speaking of what passed at Newcomb's — "during that conversation, they *claimed a balance of* $300 *or over*, and we objected to the amount, and claimed that we had paid them fully as much as they should receive, *on the grounds* that so much of the domino stuff *had been imperfect ;* we also claimed *deductions* on the checker stuff."

Defendant Newcomb, also speaking of the same interview, says: "We then objected *as to the quality* of the stuff delivered, and declined to pay them, because the *short* amounted to more than their bill, and we showed them the figures. I *did not object to the items,* only to the bill; we showed them by figures on their accounts that we did not owe them any thing; they thought it was *too much deduction.*"

It very clearly appears that defendants' whole ground of controversy and objection, both at the previous interviews of the parties

and at the trial, was not at all as to the amount furnished, but, first, as to the right to throw out defective stuff, and then as to the amount to be thus deducted. The correctness of plaintiffs' bill of items was not in dispute, and the proof, independent of the evidence on that point, objected to, was entirely sufficient and conclusive.

The controversy was over the question whether or not there was an agreement between the parties that defendants might "select out of such stuff as was sent to them by plaintiffs, such whole pieces as were entirely unfit for the purposes of their manufacture, and return the same to plaintiffs, and might, after the remainder of said stuff so sent was sawed up, select out and throw away such parts and pieces thereof as were unfit for the purposes of their manufacture, and that defendants should pay only for so much of said stuff as should be fit for the purposes of such manufacture, after selecting out such parts and pieces as aforesaid."

The testimony of the defendants, corroborated by two witnesses, a brother of each defendant, was clearly to the effect that there was such an agreement. The agreement was, however, positively denied by both plaintiffs. Under this conflict it was the province of the referee to decide, and it is not for the court in such a case to overrule his decision.

In regard to two thousand feet, the last that was furnished, it is claimed by defendants that it was one thirty-second part of an inch smaller than it was ordered to be, and consequently unfit for defendants' use, that defendants did not and could not discover this defect until half of it was sawed up for use; and as to such half it is insisted defendants are in any view excused for failing to return it, and are bound to pay only its actual value, shown to be one dollar. No such deduction is made by the referee, and upon a request to find these facts he refuses.

That this lumber was of a size smaller than the order called for is undisputed; but whether defendants ought to have discovered that fact before attempting to use it, and then notified plaintiffs to take it back, is a question about which there is some conflict. Plaintiff Clark and defendant Hyatt had an interview on the sub-ject, at which Clark claimed that defendants should have found out that it was too small before they sawed it up; and Hyatt testifies that if his attention had been called to it specially, he could have told that it was too small, although he *did* see it, and give it such

examination as he usually gave to stuff coming to the shop, and from such examination did not discover that it was too small.

I am inclined to think the referee was warranted in holding under this evidence that the defendants were in fault in not discovering the defect before sawing up the timber, and do not excuse themselves from the duty of refusing to receive it, and notifying plaintiffs to take it back. The fact that the defect was discoverable only by actual measurement, is not sufficient excuse for the failure to discover it. Measurement was the obvious and easy mode of testing its conformity to the order, and but a reasonable requirement of defendants.

Upon a consideration of all the points raised by the appellants, I think the decision of the referee must be sustained.

The judgment must, therefore, be affirmed with costs.

BOARDMAN and J. POTTER, JJ., concurred.

*Judgment affirmed.*